## UNION TRUST COMPANY *v.* ABEL A. ROSENBURG ET AL.

### [No. 69, October Term, 1936.]

410

*Decided January 14th, 1937.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter H. Buck* and *Eben F. Perkins*, for the appellant.

*Joseph S. Goldsmith*, for the appellees.

MITCHELL, J., delivered the opinion of the Court.

On July 27th, 1936, Benjamin Chipman and Rose Chipman, his wife, executed a mortgage to Rosella Rosenburg *et al.*, on fee simple property known as No. 36 Hopkins Place, and located in the City of Baltimore, to secure the

payment of a loan in the sum of $50,000. The mortgage contained the following covenant: "And it is covenanted that until default be made in any covenant or condition of this mortgage (but not thereafter), the said mortgagors, their heirs, successors or assigns shall have possession of the property, upon paying in the meantime all taxes and assessments, public dues and charges levied or assessed or to be levied or assessed on the mortgaged property and on the mortgage debt and interest, which mortgage debt and interest, taxes, assessments, public dues and charges the said mortgagors covenant to pay when legally due."

Subsequently the said mortgagors, subject to the lien of the above mortgage, executed a mortgage on the same property to the appellant, the Union Trust Company of Maryland, to secure the payment of a loan of $19,000. Later, upon default of the mortgagors, the last mentioned mortgage was foreclosed under proceedings instituted in the Circuit Court of Baltimore City, and the property sold to Kenneth A. Bourne, and by deed dated the 7th day of January, 1932, conveyed by Bourne to the appellant. Title to the property, subject to the first mortgage, continued to be vested in the defendant until divested by the foreclosure of the first mortgage, under which latter proceedings the appellees became the purchasers; the property being conveyed to them by a deed from the trustee dated February 16th, 1935.

Some time shortly after October 28th, 1933, the quarterly interest on the first mortgage due on October 27th, 1933, not having been paid, a conference was held between representatives of the first mortgagees and those of the Union Trust Company, the then holder of the legal title and party in possession of the property. This conference finally resulted in a verbal understanding between the conferees, to the effect that the first mortgagees would postpone a foreclosure and permit the appellant to continue its ownership and management of the property; it being understood that from the income the appellant would "pay all the debts, the upkeep, *including taxes,*

and insurance and such expenses," and at the end of any half year, pay to the appellees, "as interest against the amount of accumulated interest, the sum that remained in surplus over and above the expenses during that period." The Union Trust Company continued the ownership, possession, and management of the property, until finally ousted by the second foreclosure. Meanwhile the company failed to pay taxes for the years 1934 and 1935, due the State of Maryland and the Mayor and City Council of Baltimore, or to pay any interest on account of the first mortgage.

Section 69 of Article 81 of the Code of Public General Laws of Maryland, as amended by Laws 1931, ch. 414, provides: "All State, county and city taxes on real estate shall be liens on the real estate in respect of which they are levied from the date they become payable." Section 48, as amended by Laws 1931, ch. 500: "All ordinary State taxes levied upon assessments made by the county commissioners or the Appeal Tax Court shall be payable on and after the first day of January of the year for which they are levied." And section 40 of Article 4 of the Code of Public Local Laws (Baltimore City), after providing for the passage of an ordinance fixing the rate of taxation, states: "The taxes levied under said ordinance in the month of November in each year shall be the taxes to be collected for the fiscal year next ensuing after the said month of November, and shall be due and may be paid to the City Collector on or after the first day of January next ensuing."

It is therefore apparent that taxes for the year 1935 were due on January 1st of that year, and these, plus the taxes for the previous year, amounting to the sum of $1,867.19, represent the total taxes which accrued during the period in which the appellant owned and managed the property, and which it did not pay, but which the appellees did pay.

Claiming the above total as being due them under the covenants contained in their mortgage, the appellees filed their bill of complaint against the appellant, in which it

was alleged that, independent of any understanding between the parties, the appellant was liable to them for such taxes as accrued upon the property during the period in which it held title to the same. The case was heard upon bill, answer, and testimony; and from a decree of the court in favor of the appellees for the amount of said taxes, this appeal is taken.

A stipulation found in the record shows a deficit, due the first mortgagees under the foreclosure of their mortgage, of $22,926.49. And under an agreed statement of facts, it is shown that, during the period in which title to the property was vested in the appellant, disbursements thereon exceeded income accruing therefrom to the extent of $3,451.39. The statement does not accurately show the comparative receipts and disbursements for the period accounting from the date of the verbal understanding between the parties and the date the appellant ceased to hold title to the property; but it does, however, show that receipts for the year 1934 exceeded disbursements by the sum of $1,297.46, the taxes for that year, as stated, not being paid.

In the brief and oral argument on behalf of the appellant, it is contended: (a) That the verbal understanding between the parties hereinbefore set forth, under which the appellant was to continue for an indefinite period to control and manage the property which it then owned, estops the appellees from now claiming reimbursement for said taxes, and that they are precluded from asserting such claim by virtue of the covenant to pay the taxes set forth in the mortgage. (b) That if, under the facts in the case, the appellees are not precluded from asserting their claim by reason of their course of dealing with the appellant, then the question which arises is whether a party purchasing fee simple property, subject to the operation and effect of a first mortgage, thereby becomes personally responsible to the mortgagee for taxes paid by the mortgagee for the period during which such purchaser holds title to the property.

With reference to the first contention, it can hardly

be seriously maintained that the verbal understanding between the parties was binding upon either of them. At best, it was a mere postponement of the foreclosure of the first mortgage at a time when the appellant was the holder of the legal title, in full control and management of the property, and thereby collecting all revenues accruing therefrom. Up to a short while before this conference, the appellant had apparently paid the taxes; and it recognized its obligation to the first mortgagees by paying the interest on their mortgage down to the 27th of July, 1933. The conference resulted from the failure of the appellant to meet the quarterly interest payment falling due on October 27th, 1933; and after some discussion, in which it developed that the appellant would not then meet the payment, it was agreed that the relations between the parties would remain undisturbed by a foreclosure of the first mortgage; it being expressly understood that the appellant would meanwhile continue to collect the revenues accruing from the property, pay the current expenses thereon, *including taxes*, and pay the surplus, if any, of revenues over and above disbursements, on account of the interest due on the first mortgage, at semi-annual intervals. It is definitely shown by the record that no consideration passed to the appellees for this further indulgence; while on the other hand, the staying of the foreclosure of the first mortgage furnished opportunity, which was readily accepted by the appellant, in which possibly to protect its interests in the property. As has been stated, there was no definite period stipulated in which the arrangement was to continue; and it is shown that the appellant made no further payment on account of the interest, and failed to pay any taxes accruing after the date of the conference; although it is shown that for at least during the year 1934 it collected revenues in excess of disbursements for that year amounting to $1,297.46; and that it did not pay the taxes for said year amounting to $955.06, notwithstanding the excess revenues would have justified such payment.

Passing for the moment questions which will later be

dealt with, arising out of the covenant to pay taxes, as contained in the mortgage, we cannot agree that the result of the conference had any effect upon the then legal rights and liabilities of the respective parties. In the last analysis, the promise of the appellant to pay the taxes was but an affirmation on its part, as the then owner of the property, to do what it was already legally obligated to do.

The real questions, therefore, before us for consideration are: (a) Whether, under the facts in this case, the covenant in the mortgage to pay the taxes runs with the land and binds the assignees of the mortgagors, notwithstanding that the word "assigns" is omitted from the strict wording of the covenant; and (b) whether the claim for reimbursement for taxes which accrued and became demandable upon the property during the period in which the appellant held the legal title thereto, and which have been paid by the appellees, is recoverable in a court of equity, or must be asserted in a court of law.

In 7 *R. C. L.* 1099, sec. 16, it is stated: "It is an essential quality of a real covenant, that it relates to the realty, having for its object something annexed to or inherent in or connected with land or real property; and a covenant is said to run with the land when either the liability to perform it, or the right to take advantage of it, passes to the vendee or other assignee of the land." The same authority, at page 1100, cites *Spencer's Case* (4 Coke 16, 1 Smith's Leading Cases, [9th Am. Ed.] 174) as a leading case on the subject, and lays down the rule: "That when the covenant extends to a thing in esse, parcel of the demise, annexed and appurtenant to the thing demised, it shall go with the land, and shall bind the assignee, although he be not bound by express words. * * * Accordingly, if a covenant capable of running with the land relates to a thing *in esse,* the assigns of the covenantor are bound, though he has not named his heirs and assigns, and has not covenanted on their part." In further discussion of this subject, on page 1101, it is said: "In view of the later decisions, it ought not to be said that the use of 'assigns' as a technical word is or ever has been essen-

416

tial to the running of a covenant with the land at the common law." Likewise, in 15 *C. J.* 1244, title "Covenants," the principle is thus announced: "The rule which now seems sustained by the better reasoning, as well as by the weight of authority, is that where a covenant is of such nature and character that it may run with the land, the words 'heirs and assigns' are not controlling, if it can reasonably be inferred from the language of the instrument that the parties intended that the covenant should run with the land."

It will be noted that the covenant in the mortgage of the appellees provides, in substance, that "until default be made in any condition of the mortgage, but not thereafter, the mortgagors, *their heirs, successors or assigns,* shall have possession of the property, *upon paying in the meantime all taxes and assessments,*" and other specified charges, which taxes and assessments and other specified charges "the said mortgagors covenant to pay when legally due."

Those who executed the first mortgage were, of course, only the original mortgagors, but by its terms they expressly agreed that they, their heirs, successors, or assigns, until default in any covenant, but not thereafter, should have possession of the property, upon paying in the meantime the charges hereinbefore mentioned. It follows, therefore, that the appellant, as successor in title to the original mortgagors, must and did succeed to the property, subject to the express condition precedent found in the mortgage, notwithstanding the omission of the words "heirs, successors or assigns" in the concluding clause of the covenant. In other words, in our view, it would be an illogical conclusion to hold that it was the intention of the original mortgagors to provide that their heirs, successors, or assigns should come into possession of the property and enjoy the benefit of the emoluments accruing therefrom, without at the same time incurring the obligations incident to its maintenance; or, stated differently, that it was the intention of the mortgagors to assume the whole obligation of the payment of taxes and

charges, regardless of the passage of title in the mortgaged property to others. It might be added that it would be likewise illogical to conclude a similar intention on the part of the mortgagees, for the obvious reason that the covenant to pay, in itself, is dependent upon the financial responsibility of the covenantor, and that the passing of his title in the property to the successor would correspondingly weaken and in many cases destroy the security of the covenantee, if the covenant did not follow the property.

Much consideration is stressed in the brief of the appellant upon the technical distinction between covenants to pay taxes and other charges embraced in mortgages upon leasehold, and similar covenants with respect to fee simple property, upon the theory that in the event of default in the former class of covenants, the lessee's estate automatically terminates, whereby immediate possession of the leasehold vests in the mortgagee, whose relation to the holder of the reversion becomes that of lessee to the premises.

It has been uniformly held by this court that covenants to pay rent and taxes by a lessee, his personal representatives and assigns, upon a leasehold estate, are binding upon the assignee of such estate, in the absence of any agreement to the contrary, and enforceable against the assignee by the reversioner. The right of the reversioner to enforce the covenant against the assignee arises from privity of estate, and takes effect from the date of the assignment. In *Williams v. Safe Deposit & Trust Co.*, 167 Md. 499, 175 A. 331, 333, a case dealing more especially with the liability of the mortgagee of a lessee, upon default of the latter to meet the covenants, will be found a careful compilation of the authorities upon the subject. It is there stated: "It is a principle of law that an assignee of a lease is subject to the performance of all the covenants that arise from privity of estate, such as covenants to pay rent, taxes, or assessments. *Kent's Com.* 144; *Lester v. Hardesty*, 29 Md. 50, 54; *Worthington v. Cooke*, 52 Md. 297, 309." To the same effect is the

more recent case of *Hart v. Home Owners' Loan Corp.*,
169 Md. 446, 182 A. 322, 323, where it is said: "It has
long been the settled law of this state that the holder of
a mortgage on leasehold property is, where the mortgage
contains no provision for redemise, and, from the date
of any default by the mortgagor in the covenants of the
mortgage where it does contain such a provision, bound
by all the covenants in the lease which run with the
land, including covenants to pay rent and taxes."

It is true the cases to which reference is above made
concern leasehold property, and the liability of an as-
signee of a leasehold estate, for breaches of covenants
running therewith. But the same principle applies to
covenants which run with the land involved in fee simple
estates, namely, that the right of assignee or grantee of
either character of estate, to enjoy the rents and profits
accruing therefrom, imposes the correlative liability to
perform the covenants which run with the land involved
in the estate, so long as the privity of estate exists. When
the privity of estate ends, in the absence of an express
agreement, the basis for the liability of an assignee or
grantee on covenants which run with an estate in land is
gone. Hence an assignee or grantee is not liable for
breaches of covenant occurring either before he acquires
title to the estate, or after he has been divested of all in-
terest in the demised premises. *Myers v. Silljacks*, 58 Md.
319; *Donelson v. Polk*, 64 Md. 501, 2 A. 824; *Nickel v.
Brown*, 75 Md. 172, 23 A. 736; *Consumers' Co. v. Bixler*,
84 Md. 437, 35 A. 1086; *Reid v. Wiessner Co.*, 88 Md. 234,
40 A. 877; *Baltimore City v. Peat*, 93 Md. 696, 50 A. 152,
698; *Commercial Assn. v. Robinson*, 90 Md. 615, 45 A.
449; *Lester v. Hardesty*, *supra*.

In the case of *Waring v. National Sav. & Trust Co.*, 138
Md. 367, 114 A. 57, 60, after analyzing and applying a
principle adopted by this court in the case of *Oppen-
heimer v. Levi*, 96 Md. 296, 304, 54 A. 74, to the case then
under consideration, Judge Offutt said: "It is true that
that was a case of landlord and tenant, but the duty owed
by the tenant to pay the taxes to which the court referred

there cannot be distinguished in principle from the duty owed by the mortgagor to pay taxes levied on the mortgaged property where the obligation to pay them rests upon one of the covenants of the mortgage. 37 *Cyc.* 1346. Such a covenant runs with the land, and is binding upon all persons becoming the owners thereof claiming under the mortgagor."

The appellant, by its foreclosure on its second mortgage, supplanted the original mortgagors, exercised possession and ownership of the property, and, in fact, recognized the obligation of the covenant to which it succeeded, by paying at least some of the taxes and interest protected by the covenant. Independent of this action, however, it is our conclusion that the covenant in question runs with the land, and that the appellant, as successor in title, is bound thereby.

Holding, as we do, that there is no distinction between covenants of the class now under consideration, concerning leasehold estates, and those concerning fee simple estates, it follows that the remedies for the enforcement of the breach of such covenants are likewise similar; and that, the appellant having been divested of the estate at the time this suit was brought, the remedy must be in equity for the recovery of taxes which accrued and were due upon the property during the period in which he held the legal title.

In the case of *Donelson v. Polk, supra,* it is said: "So long as the privity of estate continues, the assignee is liable upon all covenants that run with the land, such as covenants for the payment of rent and of taxes assessed upon the premises *(Lester v. Hardesty,* 29 Md. 50) ; and for any breach of such covenants the lessor may sue him during the continuance of the assignment. But as his liability springs altogether from his relation to the land, it follows that when he severs that relation he puts an end to his liability for any future breaches of the covenants contained in the lease, whether such covenants be expressed or implied. In regard to this there is no question or conflict of authority. But though the liability of

the assignee for future breaches is terminated upon assignment by him, the question whether the remedy after the assignment, in respect to breaches of covenant committed by the assignee during the time of his holding, can be had by action at law, or can only be sought in equity, is one in regard to which there is conflict of authority. In England it has been held that the assignee is liable in an action at law for breach of covenant running with the land, incurred in his own time, though the action was not commenced until after he had assigned the premises. * * * But in this state it has been settled by our predecessors that such action at law, if not brought before the assignee divests himself of the estate, cannot be maintained against him." *Hintze v. Thomas.* 7 Md. 346. After carefully analyzing the latter case, in which it was held that an action at law would not lie against the assignee upon breaches of covenant for rent in that case, falling due during the period in which the assignee held the estate, but nevertheless sued for after the privity of estate had ceased, this court quoted with approval from the opinion of Baron Alderson in *Fagg v. Dobie*, 3 Younge & C. Ch. 96, as follows: "But though this be so, yet equity will give relief as to antecedent rent due, or antecedent breaches of covenant committed at the time the party was liable for them, although by his subsequent assignment the remedy at law is gone." *Mayhew v. Hardesty*, 8 Md. 479.

Finding no error, the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellees.*