KIRKLEY *v.* SEIPELT ET UX.

[No. 81, October Term, 1956.]

128

*Decided January 18, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Fred E. Weisgal,* with whom were *I. William Schimmel* and *Stanley Sollins* on the brief, for appellant.

*John J. Sweeney, Jr.,* for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County granting the complainants (appellees) the relief requested by them in their bill of complaint that the appellant be enjoined from installing or erecting metallic, hard-surfaced permanent awnings and porch covers over the windows and the porch of her residence, located at 131 Glen Argyle Road, Baltimore County, Maryland, and further enjoining her from making any alterations of any kind or description to her said property until and unless the external design and location thereof has been approved, in writing, by the Rodgers Forge Realty Corporation, its successors or assigns. The plaintiffs, in their bill of complaint, alleged that the erection of the aforesaid awnings constituted a violation of a restrictive covenant in a deed of assignment and lease that was binding upon both appellees and appellant. The appellant filed a combined answer and demurrer to the bill of complaint. A hearing was had on the demurrer which was overruled, and the case proceeded to trial. After a hearing, the trial court filed an opinion and a decree granting the re-

lief prayed by the appellees. It is from this decree that the appellant brings this appeal.

Both the appellant and appellees own homes on Glen Argyle Road, a street in the Rodgers Forge development immediately outside of Baltimore City. Glen Argyle Road has twenty-one (21) houses, all of which were leased on June 1, 1951, by James Keelty & Co., Inc., to Mary H. Stromberg and in said lease, certain restrictions, conditions and covenants were imposed upon all twenty-one (21) homes.

The appellant desired to install two metal awnings on the front of her home, and it was to this proposal that the appellees objected and was the reason for the institution of the bill of complaint and issuance of a temporary injunction against the appellant. The appellees contend that the proposed metal awnings constitute a violation of paragraph two of the lease dated June 1, 1951.

Appellant's first contention is that the restrictive covenant, under which the appellees obtained relief in the trial court, is unlawful and invalid. Her counsel argue a covenant of this nature to be enforceable against a subsequent purchaser must be shown to "run with the land" and shown not to be personal in nature, or it must be part of a uniform or general plan or scheme of development. The lease involved herein was dated June 1, 1951, and demised twenty-one lots, fourteen of which were contiguous on one side of a street, and the remaining seven were likewise contiguous to each other and directly opposite on the other side of the street. At this time, all of them were owned by James Keelty & Co., Inc. The lease contained eleven covenants that will be mentioned more in detail later, and they applied to all of the lots. In creating the covenants, this language was used: "The following covenants and conditions are hereby entered into by the Lessor, its successors and assigns, with the said Lessee, her personal representatives and assigns, as a part of the consideration of the execution of this Lease, to wit: * * * These covenants are to run with and bind the land and shall be binding on all the parties and all persons claiming under them until May 1, 1965. * * * If the parties hereto * * * their successors, heirs or assigns * * * shall violate * * * any of the covenants

herein, it shall be lawful for any other person or persons owning any real estate in said development * * * to prosecute any proceeding at law or in equity * * *". Both the deed to the appellant and the one to the appellees make specific reference to the covenants. Appellees obtained their property from James Keelty & Co., Inc., in June of 1951; and appellant obtained hers in June of 1955 from Anna M. Brewster *et vir,* who, in turn, had obtained it from James Keelty and Co., Inc., in June of 1951. Upon this statement of facts, we have no hesitation in holding these covenants did run with the land, and were not personal in nature. *Spencer's Case,* 5 Coke 16; *Glenn v. Canby,* 24 Md. 127; *Oak Lane Corp. v. Duke,* 196 Md. 136, 139; *Thompson on Real Property,* par. 3634; *Ford v. Union Trust Co. of Md.,* 196 Md. 112. In the *Glenn* case, this Court said: "The established doctrine is, that a covenant to run with the land must extend to the land, so that the thing required to be done will affect the quality, value, or mode of enjoying the estate conveyed, and thus constitute a condition annexed, or appurtenant to it; there must also be a privity of estate between the contracting parties, and the covenant must be consistent with the estate to which it adheres, and of such a character that the estate will not be defeated or changed by a performance of it." In *Turner v. Brocato,* 206 Md. 336, 345, speaking through Judge Hammond, this Court also said: "* * * where the covenants in the conveyance are not expressly for or on behalf of the grantor, his heirs and assigns, they are personal and will not run with the land * * *." We think the covenant presently under consideration meets these tests, and it was the clear and announced intention of the parties that it and the others should run with the land.

Counsel for the appellant further argue that the covenant must meet an additional test in that it must be reasonable and definite to be valid and enforceable. As stated above, the conveyance that created the covenant under attack contained eleven covenants. The ones not under attack provided: that all lots, with exceptions, should be residential lots; that no structure should be erected on any residential lot other than one attached single family dwelling or one dwelling not to

exceed two and one-half stories in height for not more than two families; that each residential structure would contain a minimum area and width; that no noxious or offensive trade or activity would be carried on; that each dwelling would cost not less than a named amount; that garages would be constructed in a certain manner and of named materials; and so forth. Covenant number two, the one upon which this suit must be decided reads:

> "No building shall be erected, placed, or altered on any building plot in this subdivision until the external design and location thereof have been approved, in writing, by the Rodgers Forge Realty Corp., its successors, or assigns."

Appellant contends this fails in the test of reasonableness because there were no specific standards nor a general plan or scheme of development to guide the approving party in determining approval or disapproval of the designs and locations when submitted. We think the answer to this is contained in *Peabody Heights Co. v. Willson,* 82 Md. 186, decided by this Court in 1895. In this well known case, the covenant read: "No. 1. No land to be sold or leased without a pledge to build speedily; *design of buildings to be approved by the directors".* (Emphasis supplied.) There were no standards set out in the covenants stating what matters should be taken into consideration by the directors when determining whether to approve or disapprove a "design"; nor was the aim or goal of the covenants stated. The covenants were short and few in number. In addition to the one above, they require the buildings to be 20 feet back of the building line; the front to be ornamental with shrubbery and flowers; that no nuisance, factories, lager beer saloons, etc., to be permitted; and "to regulate other proceedings". This Court held the covenant that required the design of the buildings to be approved by the directors was in all respects legal and such as the owner of land had the right to impose, and the overall object of the covenants was to secure the erection of a better class of buildings with attractive surroundings, and to prevent the construction of inferior ones that might diminish

the value of the remaining property and affect its eligibility for building purposes. Cf. *Sowers v. Church of the Holy Nativity,* 149 Md. 434.

A similar covenant was before this Court in *Jones v. Northwest Real Estate Co.,* 149 Md. 271. It required submission of the plans and specifications to the Northwest Real Estate Co. and approval of them by it before any building, fence, wall or other structure should be commenced, and gave the Company the right to disapprove any plans or specifications that were not suitable or desirable. There were some standards set out in the covenant to guide the approval or disapproval of the designs. This Court specifically held this covenant was not unreasonable and upheld its validity, noting, however, and remarking upon the drastic control given to the Company over the buildings to be erected. The Court announced the general rule to be, that where the intention of the parties is clear, and the restrictions within reasonable bounds, they will be upheld.

There can be no question as to the intention of the parties in the case at bar. The language used in the covenants, partly quoted above, makes plain the desire to regulate the construction of the dwellings in such a manner as to create an attractive and desirable neighborhood. We think the parties had a right voluntarily to make this kind of a contract between themselves; and the covenant does not create any interference with the fee of the property that would require it to be stricken down as against public policy. It does not prevent the owner from conveying the property or impose any unlawful restraint of trade, but affects only its method of use. We hold that any refusal to approve the external design or location by the Rodgers Forge Realty Corp. would have to be based upon a reason that bears some relation to the other buildings or the general plan of development; and this refusal would have to be a reasonable determination made in good faith, and not high-handed, whimsical or captious in manner.

This ruling seems not only to comply with the previous decisions of this Court, but with the weight of authority elsewhere. In *Hannula v. Hacienda Homes* (Cal.), 211 P. 2d

302, the Supreme Court of California had to consider facts strikingly similar to those in the present one. There, the plaintiff desired to erect a dwelling on a portion of a lot in a subdivision. She was refused permission on the authority of the following covenant: "7. No dwelling house * * * shall be erected until the plans and specifications with the proposed site therefor have been submitted to and approved by the first party hereto * * *." This was one of eight covenants. Neither this nor any of the others, excepting one that limited construction to dwellings or appurtenances thereto, bore upon the type of placement of any structure. In other words, there was no framework of specific restrictions within which the right to approve or disapprove plans, specifications or site could be said to be confined; and no standards or guides set out to govern such approval or disapproval. The Court in upholding the validity of this covenant cited out *Jones* case, *supra,* and then went on to say the approval or disapproval would have to be reasonable and performed in good faith. Cf. *Parsons v. Duryea,* 261 Mass. 314, 158 N. E. 761; *Harmon v. Burow,* 263 Pa. 188, 106 A. 310; *West Bloomfield Co. v. Haddock* (Mich.), 40 N. W. 2d 738; *Fairfax Community Assn. v. Boughton* (Ohio), 127 N. E. 2d 641.

During the argument, counsel for the appellee stated the above point had not been raised or decided by the court below; so, under Rule 9, it should not be considered on appeal. In the trial court's opinion, we find the following: "The Court is of the opinion that the restrictions are the usual restrictions running with the land and are unquestionably valid". In view of this, we considered and determined the question.

Appellant further complains that if the restrictive covenant be a valid one, it has, nevertheless been abandoned and waived, and the character of the neighborhood has changed, and the violation of the covenant acquiesced in, so as to make it unenforceable. Her counsel quote from *Tiffany on Real Property,* (Abridged Ed. 1940) Sec. 587:

"If the original plan of improvement has been

abandoned, or the character of the neighborhood had changed so as to defeat the purpose of the restriction, or if the Plaintiff has been guilty of laches or acquiescence in defendant's violation of, or has made equal or worse encroachments on it, it will not be enforced."

We have no quarrel with this statement of the law. It is a correct and concise enunciation of the principles of the law underlying most of the causes that discharge one from the obligation to honor the provisions of restrictive covenants. The difficulty, if any, usually is in applying the facts in each individual case to the law. There were two metal awnings, similar to the ones anticipated to be installed by the appellant, erected on the fronts of homes in this large subdivision of over 1500 homes; in addition, several metal ones had been placed, and were being maintained, on the rears of several homes; and, quite a number of canvas awnings had been installed on the fronts, and in the rears, of various homes. Apparently, no one objects to the canvas awnings, as they may be taken down in the winter. The real crux of the inquiry in determining whether there has been such a change in the neighborhood so as to defeat the covenant is to ascertain the purposes to be accomplished by the imposition of the restrictions. As stated above, we think the reasons for them were to develop an attractive and inviting community. From the evidence, it is apparent the reasons and objects for placing the restrictions on the property are as active and as alive today as they were when first imposed. There has been no such change in neighborhood as anticipated in the above quotation from *Tiffany*, or of any decision made by this Court. Nor do we think the evidence discloses an abandonment of the covenant. The placing of canvas awnings either on the fronts or in the rears of the houses and the installation of metal ones in the rears of several houses were proper matters for the determination of the Rodgers Forge Realty Corp. We hold the erection of two metal awnings on the fronts of two houses in a large development of this nature does not constitute an abandonment of the restrictive covenant, or a waiver thereof. *Schlicht v. Wengert*, 178 Md. 629, 636,

637; *Oak Lane Corp. v. Duke, supra.* Cf. *Pollack v. Bart,* 202 Md. 172; *Stewart v. Stark,* 181 Mich. 408, 148 N. W. 393; *Carey v. Lauhoff,* 301 Mich. 168, 3 N. W. 2d 67. There is no proof of laches, or acquiescence in appellant's intended violation of the covenant. In fact, she has never installed the same and acquiescence to be a defense must be acquiescence in appellant's conduct, not that of others. Acquiescence in the actions of others may bear upon the question of abandonment, but not upon the defense of acquiescence as we are now considering it; and, in order to constitute a defense, it must amount to an estoppel. *Schlicht v. Wengert, supra.* Certainly, there is no evidence in this record to show any conduct of the appellees induced appellant to attempt to commit a breach of the covenant; and, there was no suggestion that appellees had offended by making any encroachments on the covenant. We, therefore, hold that this contention of the appellant fails.

The last matter herein to be determined is whether the installation of the contemplated awnings would constitute an "altering" of appellant's dwelling so as to come within the prohibition of the covenant. The two awnings, if permitted, would consist of metal and as described in the testimony be "nine feet four inches, by five feet (drop) by eleven feet", and the other 56 inches, by 116 inches (drop) by 60 inches; and, each would weigh approximately one pound per square foot. The larger one was to be installed over the front porch, and the smaller over the front bay window, but they would be so close they would join. It readily is seen they are of substantial size and weight. It was stipulated they were intended to be permanent parts of the property—as permanent as the building itself. They were to be attached to the house by drilling holes every 18 inches over the width of the awning, and into each hole was to be inserted a lead tampin, to which was to be bolted a flashing strip, and from that, one end of the awning was to be built. The other, or front portion would have been supported by one inch galvanized steel posts inserted into the cement of the porch floor. The smaller one over the bay window would have been supported by a brace back to the wall of the house.

We have not been referred to, nor have we found, any decision, wherein this Court has been called upon to define the word "alter". It is defined by *Black's Law Dictionary,* 4th Ed., as follows:

> "To make a change in; to modify; to vary in some degree; to change some of the elements or ingredients or details without substituting an entirely new thing or destroying the identity of the thing affected. * * * To change partially * * *."

See also *Words and Phrases,* Vol. 3, page 403, *et seq.* We think the proposed awnings, just described, come within the purview of the above definition of the word "alter", and therefore are within the inhibition of the covenant. The pictures of similar awnings offered as exhibits by appellant as well as the oral testimony clearly demonstrate these awnings would greatly vary and change the design, architecture, appearance, form and nature of the home to which they would be attached. As a matter of fact, if placed on many of the homes this would change the appearance and nature of the entire neighborhood. When they would have done this, it must be held they would have "altered" appellant's dwelling. Cf. *Rasch v. Safe Deposit and Trust Co.,* 136 Md. 435. Cf. *Levin v. Hamilton* (Mo. App.), 218 S. W. 2d 131.

While we have agreed with the rulings of the Chancellor, as we interpret his decree, it is too broad. By it, appellant is permanently enjoined from installing or erecting metallic, "hard surface", permanent awnings and porch covers over the windows and porches of her residence. The covenant only prohibits the alteration until the external design and location have been approved, in writing, by the Rodgers Forge Realty Corporation, its successors or assigns. We think appellant should only be enjoined from erecting the awnings over the windows and porches unless and until the external design and location have been approved as designated in the covenant. By the decree, she is further enjoined from making alterations of any kind or description to her property unless and until the external design and location have been approved as above indicated. There was no offer in the testimony to

show any attempted alteration other than the erection of the said awnings. We, therefore, see no necessity, abstractly, to enjoin her from doing something she was not alleged nor proven to have attempted. Consequently, we will remand this case without affirmance or reversal, so the decree appealed from may be stricken, and a new one entered enjoining appellant in accordance with this opinion.

> *Case remanded without affirmance or reversal so the decree appealed from may be stricken and a new one entered enjoining appellant in accordance with the above opinion, appellant to pay the costs.*