66 A.3d 1132

**Randall REINER, et ux.**

v.

**Clifford EHRLICH, et al.**

No. 33, Sept. Term, 2012.

Court of Special Appeals of Maryland.

May 29, 2013.

William R. King, Potomac, MD, for Appellant.

Jason Fisher, (J. Bradford McCullough, Lerch, Early & Brewer, Chartered, on the brief), Bethesda, MD, for Appellee.

Panel: MATRICCIANI, BERGER, CHARLES E. MOYLAN, JR., (Retired, Specially Assigned), JJ.

BERGER, J.

This case arises out of a homeowners association's denial of a request to install a new roof on a home using materials not authorized by the bylaws of the association. Upon denial of the request, the homeowners, appellants Randall and Orna Reiner ("the Reiners"), filed a complaint in the Circuit Court for Montgomery County against the appellees, the homeowners association and sixteen individual homeowners in the community. The appellees filed motions to dismiss the Reiners' complaint, or, alternatively, moved for summary judgment. After holding a hearing, the circuit court dismissed the complaint as to the individual homeowners, and entered summary judgment in favor of the homeowners association. Thereafter, the Reiners filed a motion to alter or amend the judgment, which was denied without a hearing. This appeal followed.

The Reiners present one question for review, which we have rephrased as follows: [1]

1.  Whether the circuit court erred by entering summary judgment in favor of the homeowners association.

2.  Whether the circuit court erred by granting the individual homeowners' motion to dismiss the complaint.

3.  Whether the circuit court abused its discretion by denying the Reiners' motion to alter or amend the judgment.

For the reasons set forth below, we affirm the judgment of the Circuit Court for Montgomery County.

---

**1.** The Reiners framed their question presented as follows: "Did the Trial Court err when it granted [Appellees'] Motion for Summary Judgment?" The argument section of the Reiners' brief, however, also argues that the individual homeowners were proper parties. Accordingly, we review the grant of the motion to dismiss. Likewise, the Reiners' brief also argues that certain bylaws were not enacted with the requisite due process—an argument that was only raised in a motion to alter or amend the judgment. For this reason, we also review the trial court's denial of the motion to alter or amend the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Reiners own a house located in a community known as "Avenel." The Avenel community is comprised of over 900 homes in thirteen villages. The Reiners' home is located in the village of Player's Gate, where the Reiners have lived for 18 years.

The Avenel community is governed by a homeowners association ("the Association"). The appellee homeowners association contends that it is a Maryland corporation called "Avenel Community Association, Inc." The Reiners acknowledge the existence of Avenel Community Association, Inc., but contend that another association supercedes that corporate entity. The Reiners refer to this as the "Avenel Community Association," which, in their view, is a "trust relationship between the homeowners and the fiduciaries acting for the homeowners under the Avenel–Declaration."

The original roof of the Reiners' home was made of cedar shake material. In 2010, the Reiners submitted a request to the Association for approval to install an asphalt roof. The Association denied the Reiners' request on the basis that asphalt roofs were not permitted in the village of Player's Gate. The Reiners filed a complaint with Montgomery County's Commission on Ownership Communities ("CCOC"). While that case was pending, the Reiners notified the Association—in writing—that they had signed a contract to install a new roof using asphalt shingles. The Association served the Reiners with a "cease and desist" notice, warning against the replacement of the Reiners' roof with asphalt shingles, or any other product not permitted by the bylaws of the Association.

The Reiners withdrew their CCOC complaint on October 5, 2011. On October 7, 2011, the Reiners filed a complaint for declaratory judgment in the circuit court for Montgomery County. The complaint named as defendants Clifford Ehrlich, Maureen Scott, David Urban, Scott Becker, Mary L. Thrasher, James Coley, Michelle Litvak, Ron Paulsen, Jonathan Brooke Halle, Kamal Tabbara, Joanne Joseph, Sandra Becker, Miriam Conley, Marilyn Danker, Frances Baker, and Barbara

Bloomfield ("the individual homeowners"). The complaint alleged that each of the individual homeowners was "a homeowner in the community designated as 'Avenel.'" The Reiners made no other allegations regarding the individual homeowners or their roles in the homeowners association.

The complaint also named as a defendant "Avenel Community Association . . . a homeowners association formed under Title 11 B of the Maryland Real Property Code." The Reiners sought a declaratory judgment "with respect to use of roofing materials in the homes at Avenel," as well as declaratory relief regarding "any rules and standards" imposed and applied "throughout the Avenel community."

Two weeks later, the Reiners filed a motion for a temporary restraining order or preliminary injunction to restrain the Association from interfering with the installation of an asphalt roof. On October 25, 2011, a hearing was held. The court issued a written opinion and order denying the Reiners' request on the basis that the requisite factors for issuance of a preliminary injunction had not been satisfied.

Subsequently, the individual homeowners filed a motion to dismiss the Reiners' complaint for declaratory judgment, as well as a motion for sanctions. The homeowners contended that the Maryland Rules expressly prohibited the filing of a complaint against individual homeowners in a homeowners association. The Association also filed a motion to dismiss the Reiners' complaint, or alternatively, a motion for summary judgment. The Association contended that there is no entity known as "Avenel Community Association," and that the proper entity is "Avenel Community Association, Inc." Additionally, the Association maintained that its denial of the Reiners' request to install an asphalt roof was immune from judicial review pursuant to the business judgment rule.

The circuit court held a hearing on the motions on January 3, 2012. The trial judge dismissed the complaint as to the individual homeowners on the basis that they were not proper parties under the Maryland Rules. Additionally, the trial court granted the motion for sanctions.

The trial court also considered the Association's motion, which it treated as a motion for summary judgment. At the hearing, the Reiners presented an affidavit from the general manager of the Association. The affidavit provided that the "entity that governs the affairs of the community known as 'Avenel' is the 'Avenel' Community Association, Inc.," which is "governed by and pursuant to Maryland law and its Articles of Incorporation; its recorded Protective Land Use Standards, Declaration of Covenants, Conditions and Restrictions (as well as amendments and supplements thereto); Bylaws; and Architectural Guidelines and Architectural Review Process (and amendments and supplements thereto)."

The Reiners also submitted certain exhibits that were attached to the Association's motion and affidavit. These exhibits included the Association's: (1) Articles of Incorporation filed with the State of Maryland State Department of Assessments and Taxation; (2) Bylaws; (3) Declaration of Covenants, Conditions and Restrictions; and (4) Declaration of Protective Land Use Standards.

Article XI of the Association's Declaration of Covenants, Conditions and Restrictions (hereinafter, the "Avenel–Declaration") provides in part:

It shall be prohibited for any Owner or Vacant Lot Owner to undertake (1) any construction, which term shall include, in addition to the actual erection of a dwelling and its appurtenances, any staking, clearing, excavation, grading, or other site work, (ii) any landscaping, plantings or removal of plantings or removal of plants, trees or shrubs, or (iii) any modification, change or alteration of a Lot or Residential Unit, whether functional or decorative, except in strict compliance with this Article XI, and until the approval of either the New Construction Committee, Modifications Committee or Control Committee, as applicable, has been obtained.

Article XI of the Avenel–Declaration also contained provisions establishing a modification committee, which is responsible for

considering requests for modifications, alteration, or additions to existing homes:

Section 2. Modifications Committee. Subject to Section 3 below, the Modifications Committee ("MC") shall have exclusive jurisdiction over modifications, additions, or alterations made on or to existing Residential Units and the Lawn and Garden Areas appurtenant to such residential Units. The MC shall also be responsible for enforcing the Use Restrictions set forth in Article XII of this Declaration. The MC shall consist of at least three (3) and no more than five (5) members, all of whom shall be appointed by the Board of Directors. The MC may promulgate and amend Modification Standards as well as Application and Review Procedures. Such modification Standards shall be in addition to, and not in lieu of, the Design and Development [Guidelines] established by the NCC [*i.e.*, the new construction Committee established by Section 3], which such design and Development Guidelines shall be followed by the MC. All reasonable costs incurred by the MC in reviewing and approving applications submitted to the MC shall be the responsibility of the applicant. Unless expressly waived by the MC, all applications for Review submitted to the MC shall be accompanied by a review fee of One Hundred Fifty Dollars ($150.00) or such other sum established by the MC.

The affidavit of the Association's general manager explained that these provisions prohibit owners from "altering or changing the roof style of their home without prior approval from the Association."

The Avenel–Declaration also contained a provision regarding roofing materials that may be used by homeowners. The provision, which was dated December 4, 2006 (the "2006 Roof Specifications"), indicated that asphalt roofs were expressly prohibited, subject to certain exceptions:

Asphalt roofs are expressly prohibited unless used by the builder as part of the original roof of your home or as part of the original roofs of other homes within your village, as outlined below.

The roofing materials listed as available options for homes in Player's Gate include the following:

**Player's Gate:** natural cedar shake or natural slate, synthetic cedar, synthetic slate

The 2006 Roof Specifications also referred to "different UL performance standards for fire, impact and wind" and listed materials that have been identified as "Class A fire rated roofs":

Just as roof shingles and slates are available in a variety of styles, colors, textures, and sizes, they are also offered with different UL performance standards for fire, impact and wind. These standards may be achieved, in part, by the underlayment material that is utilized in the installation of the product. Owners should consult with their roof contractor or manufacturer to obtain further information and details on this matter. Regardless of whether or not it has approved an alternative roof material or system, the Association does not make any representations as it relates to warranties, life cycles, UL ratings or performance and safety standards, etc. Several roof materials and/or approved alternate roofs are identified by their manufacturers as Class A fire rated roofs. As noted, such rating may be achieved by the roof system installation method or may be achieved by the roof material itself. Among the various roofs approved by the Association, there are both Class A roof systems and Class A roof materials. Specific questions as to the type of rating and the manner in which such rating is achieved should be addressed to the roofing contractor or the manufacturer.

After reviewing documents submitted by the parties, the trial court determined that there was no dispute of material fact. In particular, the trial judge observed that the parties both recognized the existence of the Avenel Community Association, Inc., and that the bylaws of the association expressly prohibited asphalt roofs. Accordingly, the trial court entered summary judgment in favor of the Association.

The Reiners filed a motion to alter or amend the judgment, asserting that the 2006 Roof Specifications "may not have been properly adopted by Avenel and thus was and continues to be invalid." The trial court denied the motion without a hearing. This timely appeal followed.

## STANDARD OF REVIEW

A circuit court's decision to grant summary judgment is reviewed *de novo*. *Iglesias v. Pentagon Title & Escrow, LLC,* 206 Md.App. 624, 657, 51 A.3d 51 (2012). We must determine whether there was "'a genuine dispute of material fact on the summary judgment record'" and "'whether the party that obtained summary judgment was entitled to judgment as a matter of law.'" *Id.* (citation omitted). The "standard of review of the declaratory judgment entered as the result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law." *South Easton Neighborhood Ass'n v. Town of Easton,* 387 Md. 468, 487, 876 A.2d 58 (2005) (citation omitted).

Likewise, "[w]e review *de novo* [ ] the grant of a motion to dismiss ..." *Gomez v. Jackson Hewitt, Inc.,* 427 Md. 128, 142, 46 A.3d 443 (2012) (citation omitted). In considering a motion to dismiss, "a court must assume the truth of, and view in a light most favorable to the nonmoving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, *i.e.,* the allegations do not state a cause of action for which relief may be granted." *Id.* (citation omitted).

An appeal from the denial of a motion to alter or amend judgment is limited in scope, and the circuit court's decision is reviewed under a more deferential standard. *Central Truck Ctr., Inc. v. Central GMC, Inc.,* 194 Md.App. 375, 397, 4 A.3d 515 (2010). We review "an order denying such motion under an abuse of discretion standard." *Monarc*

*Constr., Inc. v. Aris Corp.*, 188 Md.App. 377, 384–85, 981 A.2d 822 (2009) (citations omitted).

## DISCUSSION

### I. Case Disposition

██ The Reiners first contend that "a 'Motion to Dismiss/Summary Judgment' is rarely appropriate in a Declaratory Judgment Action; the issue before the trial court is whether the moving party is entitled to a declaration of his rights, not to a favorable determination of those rights." The Association argues that the motion to dismiss and for summary judgment were appropriate in this case because the motions were necessary to challenge the availability of the declaratory judgment remedy. We agree with the Association.

The Reiners cite *Broadwater v. State*, 303 Md. 461, 466–68, 494 A.2d 934 (1985), for the proposition that a motion to dismiss is not appropriate in a declaratory judgment action. In *Broadwater*, the Court of Appeals held that a motion to dismiss for failure to state a claim "is rarely appropriate in a declaratory judgment action." *Id.* at 465, 494 A.2d 934. The Court of Appeals explained, however, that a motion to dismiss is appropriate in order to challenge the legal availability or appropriateness of the declaratory judgment remedy. *Id.* Thus, where there is no justiciable controversy between the parties, a motion to dismiss is appropriate. *Id.* at 467, 494 A.2d 934.

The Reiners also cite *Ashton v. Brown*, 339 Md. 70, 87, 660 A.2d 447 (1995), for the proposition that the trial court erred in entering summary judgment in this case. In *Ashton*, the circuit court granted the defendants' motion for summary judgment at the conclusion of oral argument. *Id.* "The only written order was a docket entry stating that the defendants' motion for summary judgment was granted and that the plaintiffs' motion for partial summary judgment was denied." *Id.* at 86, 660 A.2d 447. The Court of Appeals held that the circuit court should have entered a written judgment declaring the rights of the parties. *Id.* at 86–87, 660 A.2d 447. Here,

on the other hand, the trial judge signed an order that referenced the oral ruling and the reasons he had given on the record during the motions hearing.

In our view, neither *Broadwater* nor *Ashton* prohibits parties from filing motions to dismiss or for summary judgment in declaratory judgment actions. Moreover, as explained below, the trial court's grant of the motions was appropriate in this case.

## II.  Summary Judgment

The Reiners argue that the trial court erred in granting summary judgment in favor of the Association because (1) the governing Association is a trust relationship between the homeowners and the fiduciaries, and, therefore, the business judgment rule does not apply;  (2) the law of restrictive covenants applies, and, therefore, the business judgment rule does not protect the Association's decisions from judicial review;  and (3) the 2006 Roof Specifications violate the Montgomery County Fire Safety Code.

### A.  The Law of Trusts and the Business Judgment Rule

The Reiners acknowledge the existence of "Avenel Community Association, Inc.," but allege that the law of trusts applies to this case due to an overarching fiduciary relationship owed to Reiners as homeowners, and because the corporate entity here is nothing more than a "straw-man." The Association argues that the law of trusts does not apply to this case. Rather, the Association posits, the law is well-settled that the business judgment rule protects decisions of a homeowners association. We agree with the Association.

#### i.  Governing Entity

First we consider the entity governing the Reiners' community. The Reiners agree that: (1) "On October 21, 1985 . . . Maryland's State Department of Assessments and Taxation recorded "Articles of Incorporation of 'Avenel Community Association, Inc.' ";  (2) The State of Maryland on October 21, 1985 granted a 'corporate charter' for an entity named 'Avenel

Community Association, Inc.'"; and (3) "On April 23, 1986 . . . Land Records of Montgomery County, Maryland recorded the filing of 'Declaration of Covenants, Conditions and Restrictions for Avenel Community Association.'" The Reiners contend, however, that "an 'association' of persons" existed before the time that Avenel Community Association, Inc. was formed, and that there is "[n]o subsequent document [that] exists . . . which invalidated, made void, or merged that 'association' into the 'State Charter.'" Accordingly, the Reiners conclude, "that original . . . 'association' continued to exist, and, *ab initio*, it created a common law fiduciary relationship among the homeowners."

Additionally, the Reiners agree that the Association's articles of incorporation provided that the "Powers and Purposes . . . of the Articles of Incorporation for Avenel Community Association, Inc. . . . [are] set forth in the 'Declaration of Covenants, Conditions and Restrictions . . .' [Avenel–Declaration]." This provision, they contend, establish[ed] an entity named Avenel Community Association, Inc. which, in-name-only, is a 'corporation' and which, in reality, is a 'straw-man', a legal fiction and an 'alter ego' forever subordinated to the 'association' formed by the Avenel–Declaration."

Finally, the Reiners acknowledge that the bylaws define the term 'Association' as follows: "'Association' shall mean and refer to Avenel Community Association, a Maryland . . . corporation.'" However, the Reiners maintain that: "Such words do not 'make' an entity into a 'corporation'. . . . No entity can declare itself to be 'incorporated.'" Moreover, the Reiners acknowledge that, "while there are references to a 'board of directors' within the Avenel Declaration, that document does not create or establish (1) any 'board of directors' by such name, (2) specify the methods for election of persons to a 'board of directors,' or (3) specify the exact jurisdiction, powers and authority for such 'board of directors.'" Accordingly, the Reiners contend that the Association's various committees are not a part of the corporate entity, but rather "independent committees . . . exclusive and separate from the realm of any other persons authorized to conduct activities."

In our view, there is no dispute of material fact on the record presented before the trial court. The Reiners acknowledged the existence of the Avenel Community Association, Inc., and the bylaws governing their community. The fact that the Reiners asserted a novel legal argument, urging the court to "forever" disregard the incorporated association as an alter ego for individual homeowners acting independently, does not change this analysis. The assertion of a disputed legal argument does not constitute a dispute of material *fact.*[2]

### ii. Governing Law

Next, the Reiners contend that the trial court erred in granting summary judgment because the trial judge failed to apply the law of trusts. The Association argues that there are clear legal principles governing homeowners associations, and that it was entitled to summary judgment as a matter of law. We agree with the Association.

The general rule under Maryland law is that decisions made by a homeowners association's board of directors will not be disturbed unless there is a showing of fraud or bad faith. *See Black v. Fox Hills North Cmty. Ass'n,* 90 Md.App. 75, 82, 599 A.2d 1228 (1992). In *Black,* members of a homeowners association challenged the association's approval of a fence installed by other members of the community. *Id.* at 77, 599 A.2d 1228. The plaintiffs claimed that the fence was approved and installed in violation of the association's covenants and restrictions. *Id.* We held that it did not matter whether the fence actually violated the association's declaration of covenants, because the enforcement of those rules was within the exclusive purview of the association. "Whether [the association] was right or wrong; the decision fell within the legitimate range of the association's discretion." *Id.* at 83, 599 A.2d 1228. We further explained: "Absent fraud or bad faith, the decision ... was a business judgment with which a court will not interfere." *Id.* "The 'business judgment' rule,

---

**2.** *See infra,* Part II(A)(ii) regarding our analysis of the Reiners' legal arguments.

therefore, precludes judicial review of a legitimate business decision of an organization, absent fraud or bad faith." *Id.* at 82, 599 A.2d 1228.[3] Further, under the business judgment rule, "there is a presumption that directors of a corporation acted in good faith and in the best interest of the corporation." *Danielewicz v. Arnold,* 137 Md.App. 601, 638, 769 A.2d 274 (2001).

The Reiners seek to distinguish *Black* on the basis of our decision in *Oakhampton Ass'n v. Reeve,* 99 Md.App. 428, 637 A.2d 879 (1994). However, *Oakhampton Ass'n* concerned the scope of the property interest that owners held in an easement in parking areas. Therefore, *Oakhampton Ass'n* is inapposite.

The Reiners also cite general principles regarding fiduciary duties and the law of trusts. On that basis, the Reiners urge us to disregard the corporate entity as an alter ego for homeowners acting independently, and apply the law of trusts rather than the business judgment rule. We are not persuaded by this argument, and see no basis for concluding that there was a pre-existing relationship that created independent fiduciary duties owed to the Reiners by other homeowners.

In sum, we hold that the business judgment rule applies because this case falls squarely within the purview of *Black.* Here, the Association rendered a decision denying the Reiners' roof request. The Reiners—much like the plaintiffs in *Black*—sued because they disagreed with the Association's decision. The Reiners did not allege any fraud or bad faith on the part of the Association.[4] Under *Black,* "[t]he 'business judgment' rule, therefore, precludes judicial review" of that decision. Accordingly, the Association was entitled to summary judgment as a matter of law.[5]

---

3. The business judgment rule is also codified by statute. *See* Md.Code Ann. Cts. & Jud. Proc. § 5–417 (LexisNexis 2012).

4. Indeed, the Reiners conceded at the hearing that they "have not" and "are not" alleging fraud or bad faith.

5. We also observe that, under *Black,* although the business judgment rule applies regardless of whether or not an association's decision was

### B. The Law of Restrictive Covenants

The Reiners next argue that *Black v. Fox Hills North Cmty. Ass'n* does not apply because this case should be analyzed in accordance with the law governing restrictive covenants. In support of this argument, the Reiners cite *Markey v. Wolf,* 92 Md.App. 137, 164–65, 607 A.2d 82 (1992). The Association contends that this argument was never raised in the trial court and, therefore, is not preserved for appellate review. Regardless, the Association argues that the Reiners' argument lacks merit. We agree with the Association.

We normally will not address an issue "unless it plainly appears by the record to have been raised in or decided by the trial court." Md. Rule 8–131(a). *See also In re Kaleb K,* 390 Md. 502, 510–13, 889 A.2d 1019 (2006) (Motion to dismiss based on the State's alleged failure to comply with one statute did not preserve for appellate review an argument that the motion should have been granted due to the State's alleged failure to comply with another statute; the latter statutory standard "was never questioned nor argued or reflected upon by the Circuit Court.").

■■■■ Our review of the record shows that the Reiners argued only that their complaint should not be dismissed based upon the law of trusts. The Reiners never made any argument implicating the law of restrictive covenants. In fact, the Reiners asserted that fiduciary duties should "supercede" any restrictive covenants which the Association might claim as controlling:

> REINER has stated that trust law and the commands of fiduciary duty standards supercede any "contracts" or "restrictive covenants" which DEFENDANTS claim as controlling. The "contracts" or "restrictive" covenants involved in this case are facts; the issue of whether those "persons"

---

"correct," the Association's decision in this case comported with the Association's bylaws. The 2006 Roof Specifications prohibit asphalt roofs the in the Reiners' village, and instead identify four options available for use as roofing materials. The Association simply adhered to its bylaws in denying the Reiners' request to install an asphalt roof.

acting for the homeowners association must apply a fiducia-
ry-duty-standard or a business-judgment-standard when
making judgments . . . that is the question.

Accordingly, because the law of restrictive covenants was
never questioned, argued, or referenced by the circuit court,
this argument is not preserved for appellate review.

Even assuming, *arguendo*, that this issue had been
raised in the trial court, this argument is without merit. The
Reiners rely on dicta from *Markey v. Wolf*, 92 Md.App. at
164–65, 607 A.2d 82 for the proposition that a right of review
reserved by a restrictive covenant should be "closely scruti-
nized" for reasonableness and good faith. For that reason,
the Reiners argue that a standard of "close scrutiny" applies
instead of the business judgment rule. In our view, even if we
were to apply such scrutiny, our decision in *Markey* supports
the Association's position.

In *Markey*, purchasers of homes in a subdivision sued a
developer, arguing that the developer—who had reserved in a
declaration of covenants the power to approve building plans
for lots sold in the development—had breached that covenant
by approving the building plans for other lots. *Markey*, 92
Md.App. at 169, 607 A.2d 82. The plaintiffs argued that the
developer had approved building plans that were not appropri-
ate for the neighborhood. *Id.* We affirmed the trial court's
ruling "that the developer's building plan approvals were
'within the fair exercise of judgment of the declarant . . .' " *Id.*

We also quoted from *Kirkley v. Seipelt*, 212 Md. 127, 133,
128 A.2d 430 (1957), in our *Markey* decision. In *Kirkley*, the
Court of Appeals held that a developer's refusal to approve
building plans—under a covenant that reserved approval pow-
er to the developer but contained "no specific standards nor
any general plan or scheme of development to guide the
developer in the approval process"—"would have to be based
upon a reason that bears some relation to the other buildings
or the general plan of development; and this *refusal* would
have to be a reasonable determination made in good faith, and
not high-handed, whimsical or captious [sic] in manner."

*Markey,* 92 Md.App. at 163, 607 A.2d 82 (quoting *Kirkley,* 212 Md. at 133, 128 A.2d 430). In other words, a developer must have a reason for a refusal, and such refusal must not be in bad faith. Here, the Association's governing documents provide standards, there is a general plan or scheme of development, and the Reiners have conceded that the Association acted in good faith. Accordingly, even if Reiners' argument had been preserved, and we were to apply the standards governing restrictive covenants, the cases cited would support the circuit court's decision.

### C. Fire Code Violations

Additionally, the Reiners argue that they must be permitted to use asphalt shingles for their new roof in order to comply with the Montgomery County Fire Safety Code ("the Fire Code"). The Reiners cite Montgomery County Code § 22–98, which provides that a homeowners association may not require a homeowner to install a roof that lacks a Class A fire rating or its equivalent. The Association argues that it has never required that the Reiners install a roof in violation of the Fire Code. We agree with the Association.

The Reiners' complaint alleged that asphalt shingles have a Class A fire rating and that cedar shake shingles do not.[6] However, the Reiners presented no evidence to the trial court demonstrating that any of the roofing materials contained in the 2006 Roof Specifications lacked the requisite Class A fire rating. Rather, the Reiners submitted evidence indicating that the 2006 Roof Specifications did, in fact, comply with the Fire Code. In particular, at the hearing, the trial judge asked the Reiners' counsel if there was any evidence that the Association's 2006 Roof Specifications violated the Fire Code.

---

6. The Association also points out that the Reiners did not allege that any of the other materials listed in the 2006 Roof Specifications for use in the Reiners' community—i.e., natural slate, synthetic cedar, synthetic slate—lack a Class A fire rating. Accordingly, as the Association rightly observes, the Reiners never alleged that compliance with the 2006 Roof Specifications would violate the County Code.

The Reiners' counsel conceded that there was no such evidence:

> THE COURT: Have you called the Montgomery County inspectors to make a determination? Have you gotten anything from them that indicates that, in fact, that they don't meet the standards? Do you have an affidavit? Do you have anything in writing?
>
> [THE REINERS' COUNSEL]: No, Your Honor.
>
> THE COURT: Do you have a report?
>
> [THE REINERS' COUNSEL]: No, Your Honor.
>
> THE COURT: Do you have anything?
>
> [THE REINERS' COUNSEL]: No, Your Honor.

The Reiners did, however, submit an affidavit at the hearing which represented that all of the roofing materials listed in the 2006 Roof Specifications complied with the County Code. The affidavit contained the sworn statements of the Association's general manager, who attested to the fact that all of the materials contained in the 2006 Roof Specifications complied with the Fire Code.

Thus, the only evidence on the record established below indicated that the 2006 Roof Specifications complied with the Fire Code. No evidence was presented to the contrary. Accordingly, we hold that the trial court did not err in determining that there was no dispute of material fact, and that the 2006 Roof Specifications complied with the Fire Code.

### III. Motion to Dismiss

Next, the Reiners argue that the trial court improperly dismissed their complaint as to the individual homeowners.[7] The Reiners contend that the individual homeowners are the "real parties in interest." The Association counters that the Maryland Code permits only an association, and not its officers, directors, or members, to be named as a defendant in an

---

7. *See supra,* note 1, regarding the basis for inclusion of this section in our opinion.

action challenging the acts of a homeowners association. We agree with the Association.

Md.Code Ann., Cts. & Jud. Proc. § 5–422(d) (LexisNexis 2012) ("CJP") provides:

> (d) Parties named as defendants.—(1) Except as provided in paragraph (2) of this subsection, a claimant shall name only the governing body as a party defendant.
>
> (2) An officer or director of a governing body may be named individually only when the governing body for which the officer or director was acting cannot be determined at the time an action is instituted under this section.

CJP § 5–422(a) provides that " 'governing body' has the same meaning stated in § 14–118 of the Real Property Article." The Real Property Article definition includes "homeowners association[s], as defined under the Maryland Homeowners Association Act." Md.Code Ann., Real Prop., § 14–118(a)(2)(i) (LexisNexis 2012) ("RP").

Additionally, where an officer or director of a homeowners association commits a tort while acting within the scope of his or her duties, the person who sustains injury as a result "may recover only in an action brought against the governing body for the actual damages sustained." CJP § 5–422(b). The immunity of a director or officer from personal liability for such injuries exists so long as the director or officer:

> (1) Acted within the scope of the director's or officer's duties;
>
> (2) Acted in good faith; and
>
> (3) Did not act in a reckless, wanton, or grossly negligent manner.

*Id.* § 5–422(c).

The Reiners concede in their complaint that the Association is a homeowners association formed under RP § 11B–102(h). The Association, therefore is the "governing body" under CJP § 5–422(a). Accordingly, pursuant to CJP § 5–422(d), since the Association was identified as the governing body, no individual officers or directors were permitted to be named

individually. Absent any allegations that any individual home-owners committed a tort, acted outside the scope of their duties, acted in bad faith, or acted in a reckless, wanton, or grossly negligent manner, no exceptions to the general rule apply. Accordingly, the trial court properly dismissed the complaint as to the individual homeowners as a matter of law.

## IV. Motion to Alter or Amend Judgment

Finally, the Reiners argue that the trial court abused its discretion in denying their motion to alter or amend the judgment.[8] In support, the Reiners contend that the 2006 Roof Specifications are invalid because that amendment "may not" have been adopted with the required "due process." Accordingly, the Reiners maintain that their asphalt roof conforms with the original version of the Avenel–Declaration, and that they were "not required to obtain approval from [the Association] to install their new roof." We hold that the trial court did not abuse its discretion in denying their motion to alter or amend the judgment.

The Reiners filed a motion to alter or amend the judgment, which alleged that one of the "exhibits to the Wilson [9] affida-vit[ ] may not have been properly adopted by Avenel and thus was and continues to be invalid." In support of its motion, the Reiners submitted two affidavits, one from Mr. Reiner, and one from another homeowner, Mr. Advani.

Mr. Advani's affidavit asserted that he was a member of the Association's board of directors between November 2010 and October 2011. After recounting his "recollection of discussion" at a June 15, 2011 meeting of the Association's officers and directors, Advani opined, "it is my understanding that documents attached to [Wilson's] affidavit claiming to be the Avenel New Roof specifications dated in the year 2006, may have been enacted without following the due process and

---

**8.** *See supra,* note 1, regarding the basis for inclusion of this section in our opinion.

**9.** Lucy Wilson is the general manager of the Association.

therefore may be invalid and unenforceable by the Association." Mr. Reiner's affidavit stated that Mr. Advani had told him the information recited in Mr. Advani's affidavit.

The Association contends that Mr. Reiner's affidavit is inadmissible hearsay under Md. Rules 5–801 and 5–802 because it recites information that Mr. Advani told Mr. Reiner, and the affidavit rests upon the truth of the matters asserted by Mr. Advani.[10] Additionally, the Association argues that Mr. Advani's statements about the legal effect of the enactment of the Roof Specifications constitutes an impermissible opinion on a question of law. In support, the Association cites Md. Rule 5–702(1),(2), which provides that an expert witness may not give opinions on questions of law.

Even assuming the affidavits were otherwise admissible, we hold that the trial court did not abuse its discretion in denying the motion to alter or amend the judgment. The evidence on the summary judgment record—introduced by the Reiners—established the presumptive validity of the 2006 Roof Specifications. The only contradictory "evidence" later presented was an affidavit by a person who was not involved with the Association until four years *after* the document in question was adopted, and which stated only that the 2006 Roof Specifications "*may* not have been properly adopted by Avenel . . ." The trial court acted well within its discretion in finding that this was not sufficient grounds for altering or amending the judgment.

For the foregoing reasons, we hold that the trial court did not err in granting summary judgment in favor of the Association, dismissing the complaint as to the individual homeowners, and denying the Reiners' motion to alter or amend the

---

10. Md. Rule 5–801(c) provides that " '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5–802 provides: "Except as otherwise provided by these rules or permitted by applicable constitutional provisions or statutes, hearsay is not admissible."

judgment. Accordingly, we affirm the judgment of the Circuit Court for Montgomery County.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**